Argued and submitted December 19, 1989, reversed and remanded October 17, Diehl's
reconsideration and Charles' reconsideration denied December 12, 1990, Pendleton
Community Memorial Hospital's reconsideration denied January 16, all petitions for
review allowed February 5, 1991 (311 Or 150)

Adam Charles BREMNER,
by and through
his guardian ad litem Deborah A. Bremner,
Deborah A. Bremner and Brian G. Bremner,
*Appellants,*

*v.*

Ellen CHARLES, M.D.,
Joseph H. Diehl, M.D.,
and Pendleton Community Memorial Hospital,
*Respondents.*

(CV 86-163; CA A45607)

799 P2d 188

Jossi Davidson, Silverton, argued the cause and submitted the briefs for appellants.

Jeffrey Scott Eden, Portland, argued the cause for respondent Ellen Charles, M.D. With him on the brief were Thomas E. Cooney and Cooney, Moscato & Crew, P.C., Silverton.

Mildred J. Carmack, Portland, argued the cause for respondent Joseph H. Diehl, M.D. With her on the brief were David K. Miller and Schwabe, Williamson & Wyatt, Portland.

Emil R. Berg, Portland, argued the cause for respondent Pendleton Community Hospital. With him on the brief were Robert M. Keating, Lindsay H. Hughes and Hallmark, Keating & Abbott, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Warren, J., dissenting.

**ROSSMAN, J.**

In this medical malpractice action, plaintiffs are Adam, a three-year-old child, and his mother.[1] Defendants are Dr. Charles, mother's obstetrician during her pregnancy with Adam; Dr. Diehl, who attended mother during her labor and delivery; and the hospital where Adam was delivered. Plaintiffs appeal the trial court's judgment entered on a jury verdict in favor of defendants, assigning as error, *inter alia,* several rulings made by the trial court. We write to address only two contentions: The trial court erred in bifurcating the trial and in excluding Adam from the courtroom.[2] The focus of our inquiry is on whether the trial court's decisions deprived plaintiffs of a fair trial.

Plaintiffs alleged in their complaint that Adam suffered permanent brain damage as a result of defendants' negligence. According to the complaint, he will continue to suffer intellectual impairment, mental retardation, seizures, inability to control his limbs and other bodily dysfunctions. On the morning of trial, plaintiffs' counsel advised defendants' counsel, as a professional courtesy, that plaintiffs' case would take approximately a day to a day and a half longer than the original tentative schedule that they had discussed. Plaintiffs' counsel also submitted to defendants and the court a list of witnesses that plaintiffs intended to call, identifying each as either a "liability" or a "damages" witness.

Defendants then moved to try the liability portion of the case first, arguing that that would enable the parties to adhere to the original "schedule" and would avoid the need for defendants to reschedule their witnesses. The trial court granted the motion over plaintiffs' objection. Defendants also moved, before trial, to exclude Adam from the courtroom. Although the trial court initially reserved its ruling, it later denied plaintiffs' request that Adam be allowed in the courtroom for a "brief presence," ruling that he should be excluded entirely from the liability phase of the trial.

Plaintiffs first argue that the trial court's decision to

---

[1] Plaintiff Brian Bremner, Adam's father, was voluntarily dismissed by the court on stipulation.

[2] Plaintiffs assign error to numerous other discretionary rulings of the trial court. Given our disposition of the appeal, it is unnecessary to address them.

bifurcate the trial was an abuse of discretion. According to plaintiffs, jury decisions on liability are based partly on the jury's awareness of damages. Thus, bifurcation must be applied cautiously, because it may change the nature of the decision making process itself. For that reason, plaintiffs assert, bifurcation of the issues of liability and damages should be allowed only in exceptional circumstances, *e.g.*, where it is necessary in order to expedite the litigation and where the issues of liability and damages are entirely separate. *State ex rel Perry v. Sawyer*, 262 Or 610, 500 P2d 1052 (1972). Otherwise, they maintain, there is a danger that "the right of trial by jury as declared by the Oregon Constitution or as given by statute" may not be preserved, as required by ORCP 53B. Plaintiffs argue that, in this case, the issues of liability and damages were not distinct and there was no showing of exceptional circumstances. Moreover, they were harmed by the trial court's ruling, both because the jury was barred from considering the interaction between liability and damages and because plaintiffs had to reformulate their entire trial strategy on the morning of trial. Those circumstances, plaintiffs maintain, demonstrate that the trial court's decision to allow bifurcation was error.

■■ ORCP 53B provides:

> "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or issues, always preserving inviolate the right of trial by jury as declared by the Oregon Constitution or as given by statute."

We review the trial court's decision to try the case in separate phases for abuse of discretion. *Vander Veer v. Toyota Motor Distributors*, 282 Or 135, 144, 577 P2d 1343 (1978). We are limited to determining whether the trial court has exercised its discretion to an end not justified by and clearly against the evidence and reason. *Casciato v. Oregon Liquor Control Com.*, 181 Or 707, 715-17, 185 P2d 246 (1947). The range of the trial court's discretion is particularly wide in rulings concerning judicial administration. *Weiss v. Northwest Accept. Corp.*, 274 Or 343, 356, 546 P2d 1065 (1976). However, that discretion is not to be "capriciously or oppressively exercised." *Mitchell v. Campbell*, 14 Or 454, 458, 13 P2d 190 (1887).

■ ■    In this case, several factors weigh against the trial court's action. First, a threshold requirement for bifurcating a case for trial is that the issues at each stage be separate. *Vander Veer v. Toyota Motor Distributors, supra,* 282 Or at 144. As plaintiffs point out, the issues of liability and damages were not entirely separate in Adams's case, because it was necessary to ascertain the nature of his physical problems in order to determine what caused them. Plaintiffs explain:

> "All the parties were aware that plaintiff's physical condition gave important clues as to the cause of his injury, and in fact provided the only evidence to determine the mechanism and timing of injury. To establish liability required plaintiffs to prove that Adam suffered a hypoxic injury near the time of birth (as opposed, for example, to a congenital defect), which required a detailed discussion of the physical damage to plaintiff's brain and other organs."

In short, the *nature* of Adam's condition was relevant to both the liability and the damages components of his claim.

At the same time, questions of liability and damages were not completely intertwined. Evidence concerning the severity of Adam's conditions, the prognosis and the extent and nature of his damages was not essential to a determination of liability. That is, the jury could properly reach a verdict on the question of liability without hearing evidence of his damages. Moreover, plaintiffs do not contend that the trial court's decision prevented them from introducing any evidence that would have been relevant to the question of liability. Although we may have decided the matter differently, we cannot say that the trial court's determination that the issues of liability and damages were sufficiently distinct to permit separating them was an abuse of discretion.

A second requirement of ORCP 53B, however, is that separate trials be ordered only "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Defendants argued in the trial court that, unless the trial were bifurcated, they would have to reschedule their witnesses. Plaintiffs responded that bifurcation would necessitate a complicated rescheduling of their "damages witnesses" and that it might also cause the jury to resolve the issue of liability against them simply in order to be done with the case. The trial court granted defendants' motion

to bifurcate on the ground "that it would result in economy of time for everyone concerned."

That was a questionable ruling from several standpoints. The trial court apparently reasoned that bifurcating the trial could save time because, if the jury found for defendants on the liability issue, it would be unnecessary to have a trial to determine damages. That ignores the fact that, if the jury were to render a verdict for plaintiffs on the liability issue, several witnesses would have to be recalled and some of the testimony on the nature of Adam's condition would have to be repeated in the damages phase, thereby lengthening the process as a whole. Nevertheless, time is a precious commodity for a trial court. The possibility that the bifurcation might obviate the necessity for a trial on damages was a legitimate ground for bifurcation, despite its somewhat speculative nature. *Vander Veer v. Toyota Motor Distributors, supra,* 282 Or at 144.

As important as judicial economy is, however, it cannot be pursued at the expense of fairness to one of the parties. In this case, bifurcation provided the possibility of a shortened trial and served to relieve defendants of the need to reschedule their witnesses. On the other hand, it required plaintiffs to juggle their witnesses' schedules, prevented plaintiffs from presenting the devastating nature of Adam's damages to the jury and forced plaintiffs to reevaluate their entire trial strategy on the morning of trial. In short, the ruling placed plaintiffs at a disadvantage that cannot be justified by economy or any other countervailing benefit.

In our view, the court's decision may have been sufficiently prejudicial to require reversal. However, we need not decide the case on that ground alone. Plaintiffs have contended that the trial court also erred in excluding Adam from the courtroom. We agree and conclude that, considered in conjunction with its decision permitting bifurcation, the trial court abused its discretion and deprived plaintiffs of a fair trial.

The exclusion of a party from the trial is an extreme measure that must be viewed with caution. That principle holds true, in large part, because

"[t]he very right to prosecute a suit in court and to appear

therein as a party, carries with it, as a necessary incident, the further right to be present during the trial." *Leson and Leson,* 293 Or 368, 370, 648 P2d 55 (1982), *citing Schneider v. Haas,* 14 Or 174, 12 P 236 (1886).

A plaintiff's presence, however, is not always only for his benefit. Rather, as in this case, seeing the plaintiff might enable the jurors to understand better the evidence as it was presented in the courtroom, thereby assisting them in weighing and applying that evidence.

The trial court's view was:

"I don't see how Adam could meaningfully participate in this. He has no awareness of what's going on. He can't testify. He's represented by his mother who's his guardian for the purposes of this trial. I think insofar as this phase is concerned, * * * I don't think I will permit him to come on in because I think the sole purpose of that would be to prejudice the jury."

We assume, without deciding, that there are circumstances in which a trial court may properly exclude a plaintiff because of potential prejudice. For example, some jurisdictions have held that a plaintiff who is unable to comprehend the proceedings, to aid his attorney or to contribute evidence on the question of fault may be excluded, if his injuries make his presence unduly prejudicial. *See, e.g., Helminski v. Ayerst Lab, a Div. of Amer. Home Prods. Corp.,* 766 F2d 208, 213-18 (6th Cir), *cert den* 474 US 981 (1985); *Morley v. Superior Court of Arizona, etc.,* 131 Ariz 85, 638 P2d 1331, 1333 (1981). We note, however, that the trial judge in this case had no evidence before him that Adam had a grotesque appearance or was disruptive in any way. Indeed, he had never seen Adam. Rather, he appears to have presumed prejudice from the description of Adam's condition, and that is an insufficient basis on which to exclude a plaintiff from his own trial.

Because the trial court's rulings deprived plaintiffs of a fair trial, we remand for a new trial.

Reversed and remanded.

**WARREN, J.,** dissenting.

I dissent. The majority goes to great and painful lengths to find something wrong with the trial court's discretionary rulings. In the process, it has allowed the sympathetic

nature of plaintiffs' case to cloud its reasoning and has reached an incorrect result.

We review the trial court's rulings only for an abuse of discretion. In matters concerning the administration of a trial, the court's discretion is broad. *Weiss v. Northwest Accept. Corp.,* 274 Or 343, 356, 546 P2d 1065 (1976). The trial judge's decision to bifurcate the trial was based on its sound and legitimate determination that the issues of liability and damages were separate and that there was a likelihood that the proceeding could be shortened if the case was disposed of on the question of liability. Those were proper considerations. ORCP 53B; *Vander Veer v. Toyota Motor Distributors,* 282 Or 135, 143, 577 P2d 1343 (1978). Additionally, plaintiffs held out to the court that their witnesses on liability and damages could be segregated, lending further justification to the court's ruling. On appeal, they do not contend that they were prevented from putting on evidence relevant to the issue of liability. They argue only that they were prejudiced by the bifurcation, because they had to reorganize their trial presentation. They did not argue that issue to the trial court or request a continuance. I would conclude that bifurcation was not an abuse of discretion.

Additionally, I would hold that the decision to exclude Adam from the courtroom during the liability phase of the trial was not an abuse of discretion and certainly was not reversible error. Adam's interests were adequately represented by his mother, as guardian *ad litem,* and his attorney. There was nothing about his personal presence in the courtroom that could have aided the jury in determining whether defendants' negligence caused his extensive injuries. In view of the fact that Adam could not have assisted his counsel, his absence from the courtroom could have caused no prejudice to his liability case. On the other hand, the trial judge could believe that Adam's condition was such that his presence could give plaintiffs an unfair advantage by causing the jury to decide the question of liability based on sympathy, a factor that is irrelevant to any issue in the case and certainly to the issue of defendants' culpability. The court's ruling did not affect Adam's right to be present during the damages phase of the trial, when his physical appearance would have been relevant to the question of damages.

All of the rulings complained of by plaintiffs were within the trial court's discretion. Unless we can say that one ruling or more was beyond the range of the trial court's discretion, we should not reverse. The majority fails to point convincingly to any ruling in which the trial court acted improperly. It is difficult to understand how the two rulings which were not error can, when combined, constitute reversible error.