# SUPERIOR COURT
## of the
# STATE OF DELAWARE

Jeffrey J Clark
Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2111

May 7, 2021

Phillip T. Edwards, Esquire
Murphy & Landon
1011 Centre Road, Suite 210
Wilmington, DE 19805

Bruce W. McCullough, Esquire
Bodell Bove, LLC
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE  19899

Submitted: April 28, 2021
Decided: May 7, 2021

RE: ***Michael Moyer v. American Zurich Insurance Company***
***K19C-09-026 JJC***

Counsel:

This case involves Plaintiff Michael Moyer's claim that Defendant American Zurich Insurance Company ("AZIC") adjusted his workers' compensation claim in bad faith.  In Mr. Moyer's suit, he seeks (1) compensatory damages for AZIC's alleged bad faith and (2) punitive damages for AZIC's allegedly reckless disregard of his rights as an insured.

Presently, AZIC files a motion *in limine* seeking to bifurcate at trial the issue of punitive damages from the issue of bad faith.  Mr. Moyer files a motion *in limine*

of his own.[1]  In it, he requests that the Court rule admissible the evidence of a prior bad faith judgment against AZIC entered in another jurisdiction.

For the reasons discussed below, AZIC's bifurcation request is **DENIED.** The jury will consider the issues in a single proceeding.  Additionally, Mr. Moyer's request to admit evidence of a prior bad faith judgment against AZIC is also **DENIED** for the reasons provided below.

## Requested Bifurcation

AZIC moved for partial summary judgment regarding the issue of punitive damages.  When it filed that motion, it moved *in limine* to preclude Mr. Moyer from presenting evidence or argument about punitive damages at trial.  In a separate Memorandum Opinion and Order, the Court denied AZIC's partial summary judgment motion.[2]  That decision resolves the first aspect of AZIC's motion *in limine*.  AZIC now alternatively moves for the Court to bifurcate the issues of punitive damages and bad faith.

AZIC contends that trying the matters together would unfairly prejudice it by increasing the risk that the jury will improperly consider evidence relevant only to punitive damages when it decides the underlying issues of bad faith and compensatory damages.  Mr. Moyer counters with concerns of judicial economy.  In doing so, he emphasizes that the jury must consider the same evidence when deciding the two claims.

---

[1] Mr. Moyer filed a second motion *in limine* to preclude AZIC from offering evidence of how much it eventually paid him in benefits.  At oral argument, Mr. Moyer agreed that his compensatory damages will be limited to interest due because of AZIC's allegedly untimely payments.  In reliance on that concession, AZIC represented that it will not offer evidence at trial regarding the amount it ultimately paid Mr. Moyer for his workers' compensation claim.  As a result, that motion is deemed withdrawn as moot.

[2] *See Moyer v. American Zurich Insurance Co.,* 2021 WL 1663578 (Del. Super. Apr. 28, 2021) (providing the Court's reasoning for denying the motion).

Superior Court Civil Rule 42(b) provides that for "convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, [the Court] may order a separate trial of any claim . . . or of any separate issue."[3] Otherwise, when claims involve a common issue of law or fact, they should presumptively be tried together.[4]

In *Beebe Medical Center, Inc., v. Bailey,*[5] the Delaware Supreme Court addressed the issue of bifurcation of negligence and recklessness claims in a tort matter.[6] In that case, the Superior Court had denied the defendants' request for separate trials after it applied the factors contained in Rule 42(b).[7] When doing so, it examined the issues of convenience, potential prejudice to the defendants, and judicial economy.[8] It further explained that the evidence in the case could not be "neatly segregated and presented in a manner consistent with the defendants' request [for separate trials]."[9] Rather, the evidence relevant to compensatory and punitive damages interwove almost completely.[10] To address unfair prejudice, the trial court provided a limiting instruction to clarify the evidence's permissible use.[11] On balance, the Superior Court denied the motion for bifurcation by primarily relying upon trial convenience and efficiency.[12]

---

[3] Del. Super. Ct. Civ. R. 42(b). *See also Brant v. Rokeby Realty Co.,* 2007 WL 2229640 at *1 (Aug. 3, 2007) (recognizing that when facts relevant to the claims are interwoven, bifurcation of the claims is generally inappropriate).

[4] Del. Super. Ct. Civ. R. 42(a).

[5] 913 A.2d 543 (Del. 2006).

[6] *Id.* at 546.

[7] *Id.* at 549.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 550.

[12] *See Union Mutual Life Ins. Co., v. Dewey,* 270 A.2d 833 (Del. Super. 1970) (denying bifurcation because it would not be convenient or efficient and would be overly costly where the same witnesses, documents, and facts would be at issue in both trials); *See also Wallace v. Keystone Ins. Group,* 2007 WL 884755 (Del. Super. Mar. 22, 2007) (denying bifurcation because duplication of witnesses, documents, and facts results in a more costly proceeding and would not be conducive

On appeal, the Delaware Supreme Court affirmed the Superior Court's decision to deny separate trials.[13] It recognized the discretion available to the trial court, the significant overlap of evidence between the two claims, and the trial court's consideration of unfair prejudice.[14] Regarding the latter, the Supreme Court found a limiting instruction sufficient to mitigate potential prejudice.[15]

Unlike the *Beebe* case, Mr. Moyer's claims do not involve combined tort claims. Rather, bad faith insurance claims under Delaware law rest in contract rather than tort, with an additional hybrid contract-tort twist.[16] Here, Mr. Moyer's case includes a bad faith claim (contractual) and a claim for AZIC's recklessly indifferent breach of that contract (providing possible punitive damages for the breach). Notwithstanding the tort versus contract distinction, the analysis in the *Beebe* case applies equally to the case at hand.[17]

The burden falls on AZIC, as the movant, to justify separate trials.[18] Here, in applying Rule 42(b), the Court considers the partial summary judgment record. In its partial summary judgment motion, AZIC conceded the existence of a genuine issue of material fact regarding its alleged bad faith when it delayed paying Mr.

---

to judicial economy); and *Brandt v. Rokeby Realty Co.,* 2007 WL 2229640 (Del. Super. Aug. 3, 2007) (denying bifurcation while recognizing that Delaware courts routinely considers questions of liability, compensatory, and punitive damages together).

[13] *Beebe,* 913 A.2d at 558.

[14] *Id.* at 549.

[15] *Id.* at 550.

[16] *See Tackett v. State Farm Fire and Casualty Ins. Co.,* 653 A.2d 254, 257, 264-66 (Del. 1995) (discussing that bad faith claims, under Delaware law, are cognizable as breach of contract actions but may also warrant an award of punitive damages where there is a showing of intentional, malicious, or reckless indifference underlying the breach).

[17] *See Id.* at 265 (explaining that punitive damages for a breach of contract are available in the insurance context on the same bases as they would be available in the tort context). *See also Powell v. AmGuard Ins. Co.,* 2019 WL 4509165, at *4 (discussing that breaching the insurance contract with reckless disregard for the rights of an insured, or as alternatively phrased, as breaching the insurance agreement with an "I don't care attitude," is the least egregious state of mind necessary to impose punitive damages as in the tort context).

[18] *Carpenter v. Liberty Insurance Corp.,* 2017 WL 6055718, at *1 (Dec. 7, 2017).

4

Moyer's claim. Such a concession does not relieve Mr. Moyer of his burden at trial to prove that AZIC lacked reasonable justification for its actions and thus acted in bad faith. Nevertheless, if the jury finds such bad faith, it will then need to consider much of the same evidence when deciding if AZIC acted with the recklessly indifferent state of mind necessary to impose punitive damages. Namely, when deciding both matters, it will consider the same testimony and documents, with only one exception.

As to the existence of unfair prejudice, AZIC focuses on this one exception: a conditional stipulation regarding the company's financials. For three reasons, admitting that evidence in the same trial will not cause unfair prejudice to the extent necessary to justify bifurcating the proceedings. First, the evidence will be straightforward; its presentation will be streamlined by stipulation. Second, there is *no risk* that this financial information could unfairly prejudice the defendant in the jury's calculation of compensatory damages. Namely, AZIC paid Mr. Moyer's benefits, though it paid them late. If the jury finds that AZIC acted in bad faith, the Court will then calculate compensatory damages based *only* upon the interest due because of the unjustified delay. It will do so based upon the jury's factual findings on special interrogatories that fix the length of that unjustified delay. Third and finally, the Court will provide, upon AZIC's request, a limiting instruction explaining the limited purpose of AZIC's financial information. That instruction will sufficiently address unfair prejudice.

AZIC cites three Delaware decisions that it contends support its request to present the financial evidence in only a separate, successive trial. None provide authority for that position. First, AZIC cites the Superior Court's decision in *Rochen v. Huang*[19] to support a blanket premise that admitting evidence of a defendant's

---

[19] 1989 WL 5373 (Del. Super. Jan. 6, 1989).

5

financial position creates an unacceptable risk that the jury will wrongly consider the defendant's financial position when it decides the defendant's liability. The *Rochen* decision, however, involved bifurcating a punitive damages claim *and* a punitive damages counterclaim from the underlying case.[20] There, had the court refused to sever the two competing counterclaims for punitive damages from the rest of the case, it would have unacceptably risked the jury's improper comparison of the disparate financials of the plaintiff and the defendants for purposes of determining liability.[21] Such a risk is not present here.

Second, AZIC cites the Delaware Supreme Court decision in *Devaney v. Nationwide*[22] for a similar premise. That decision is likewise inapposite. There, the Superior Court found financial information inadmissible based simply on lack of foundation.[23] It did not address a bifurcated trial.[24] Rather, the court focused on the lack of foundation for certain financial documents because the proponent could not establish that the documents accurately reflected the defendant company's net worth.[25] The issue at hand is different than that examined in the *Devaney* decision.

Finally, AZIC relies on the Delaware Supreme Court's decision in *Jardel Co., Inc. v. Hughes.*[26] That decision also does not support AZIC's position. Namely, the appropriateness of a bifurcated trial was not at issue in the *Jardel* case; rather, the decision addressed the plaintiff's failure to present a *prima facie* case of intentional or reckless conduct in her case-in-chief. As a result, the trial court granted a motion for directed verdict on the issue of punitive damages.[27] Here, the

---

[20] *Rochen,* 1989 WL 5373, at *1.
[21] *Id.*
[22] *Devaney v. Nationwide Mut. Ins. Co.,* 679 A.2d 71, 76 (Del. 1996).
[23] *Id.*
[24] *Id.* at 77-78.
[25] *Id.* at 76.
[26] 523 A.2d 518 (Del. 1987).
[27] *Id.* at 527, 530.

partial summary judgment record generates a triable issue of fact regarding whether AZIC recklessly disregarded Mr. Moyer's rights. That, in turn, may justify an award of punitive damages. Ultimately, AZIC retains the right to seek judgment as a matter of law at the conclusion of Mr. Moyer's case-in-chief as did the defendants in *Jardel*. In all other regards, the decision proves unhelpful to the issue at hand.

In summary, the evidence relevant to the claims will almost completely overlap. Addressing them in the same proceeding will advance judicial economy and efficiency and any unfair prejudice can be mitigated through a limiting instruction. Accordingly, AZIC's motion requesting bifurcation is **DENIED**.

### Evidence of Prior Bad Faith Judgment

Mr. Moyer asks the Court to take judicial notice of a portion of the United States District Court for the Western District of Washington's decision in *MKB Constructors v. Am. Zurich Ins. Co.*[28] He contends that Delaware Rule of Evidence 202 permits the Court to admit the decision into evidence.[29]

Specifically, he asks that the Court admit two of the district court's findings from *MKB Constructors:* (1) that AZIC failed to conduct a reasonable investigation in the plaintiff's first-party claim; and (2) that AZIC engaged in a bad-faith delay when handling that claim.[30] He offers these findings to prove that AZIC is a bad-faith recidivist, which he contends is admissible for purposes of calculating punitive damages.

In opposition, AZIC emphasizes that the *MKB Constructors* case did not involve a Delaware workers' compensation claim; rather, the case involved an eight-

---

[28] 2015 WL 1188533 (W.D. Wash. 2015), *aff'd,* 711 Fed.Appx. 834 (9th Cir. 2017).
[29] *See* D.R.E. 202(a)(1) (providing that "[e]very court in this State may take judicial notice of the common law . . . of the United States and every state . . . of the United States.").
[30] Plaintiff's Motion *in Limine* Regarding Evidence of Recidivism at 2, para. 2.

year-old Alaskan builder's risk claim. Because the claims in the two cases are so different, AZIC contends that the unfair prejudice caused by admitting the evidence would substantially outweigh its relevance. Finally, AZIC also reads D.R.E. 404(b) strictly and contends that the evidence is inadmissible because Mr. Moyer does not offer it for one of the itemized purposes listed in the Rule.[31]

At the outset, character evidence is universally inadmissible in civil cases.[32] In other words, a defendant's prior conduct is not admissible to prove his or her likely conformance to past practices.

Apart from character evidence, D.R.E. 404(b)(2) provides a separate avenue of admissibility. It recognizes a non-exhaustive list of alternative purposes for such evidence "*such as* proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[33] Here, Mr. Moyer does not offer the evidence for one of the itemized purposes listed in the Rule; he offers it for another permissible purpose. Specifically, he offers it to prove the availability of punitive damages and the appropriate amount of those damages. Both purposes independently qualify as "another purpose" as contemplated by D.R.E. 404(b)(2).

In its *Getz v. State*[34] decision, the Delaware Supreme Court provided the framework applicable to questions arising under D.R.E. 404(b). It did so in the criminal-case context; most Delaware decisions that apply the *Getz* criteria are criminal decisions. Those criminal decisions typically examine the admissibility of evidence of prior crimes.

---

[31] *See* D.R.E. 404 (b)(2) (defining permitted uses by providing, "[t]his evidence may be admissible for another purpose, *such as* proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.") (emphasis added).

[32] *See* 22B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5236 (2d ed. 2021 update) (recognizing that "[b]ecause the exceptions in Rule 404(a)(2) apply only in criminal cases, the major impact of Federal Rule 404(a)(1) has been exclusion in civil cases of character evidence offered to prove conduct.").

[33] D.R.E. 404(b)(2) (emphasis added).

[34] 538 A.2d 726, 734 (Del. 1988).

Nevertheless, the *Getz* criteria also fully apply in civil cases.[35] These criteria, when adjusted for application in the civil context, include:

> (1) [t]he evidence of other [bad conduct] must be material to an issue of ultimate fact in dispute in the case. If the [proponent] elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue[;]
> (2) [t]he evidence of other [bad conduct] must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition[;]
> (3) [t]he other [conduct] must be proved by evidence which is plain, clear and conclusive[;]
> (4) [t]he other [conduct] must not be too remote in time from the charged offense[;]
> (5) [t]he Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403[; and,]
> (6) [b]ecause such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105.[36]

To admit this evidence, the proponent must demonstrate that it satisfies the criteria identified in (1) through (5), and the Court must offer a limiting instruction as provided in (6). All six criteria must be met to admit such evidence.

As an initial observation, Mr. Moyer, the proponent, offers only conclusory arguments that the evidence satisfies the *Getz* criteria. In that sense alone, he does not meet his burden as a proponent of the evidence. Furthermore, at oral argument, neither party requested an evidentiary hearing on the inquiry. Rather, Mr. Moyer

---

[35] *Mercedes-Benz of N. Am., Inc., v. Norman Gershman's Things to Wear, Inc.,* 596 A.2d 1358, 1365 (Del. 1991); *see also Powell v. AmGuard Ins.,* 2020 WL 996734, at *5 (recognizing after an *in limine* hearing regarding D.R.E. 404(b), that the *Getz* factors apply in civil cases as they do in criminal cases).
[36] *Getz,* 538 A.2d at 734.

stipulated that the record includes only the district court's written decision. There are no trial transcripts or documentary evidence from the *MKB Constructors* case available. Nor did Mr. Moyer develop evidence in his case that linked AZIC's present conduct to the bad faith found in *MKB Constructors*. This lack of evidentiary context cuts against Mr. Moyer as the proponent.

Furthermore, apart from the conclusory nature of Mr. Moyer's allegations, an independent application of the criteria makes the prior bad faith finding inadmissible. Namely, the first *Getz* criterion addresses what relevance the prior conduct has to the other purpose for which it is offered. Here, the findings in the *MKB Constructors* case have only slight relevance to Mr. Moyer's case. *MKB Constructors*, which examines an Alaskan claim, does not involve workers' compensation insurance. While it involves the same named defendant and *a* first-party insurance claim, Mr. Moyer provides no context to link AZIC's claims handling in the Alaskan claim to the payment of his claim in Delaware. On this bare record, there is only a tenuous nexus between his case and the prior case. While the threshold for relevance is low and the same defendant's bad faith in a disparate claim has at least some relevance, the probative value of the evidence here is low. This low probative value becomes important when the Court addresses the fifth *Getz* criterion, which requires a D.R.E. 403 analysis.

Here, a D.R.E. 403 analysis is dispositive. Namely, the risk of unfair prejudice from admitting the evidence substantially outweighs its relevance. A single, remote-in-time, bad faith judgment regarding a claim under a different type of policy, on the other side of the country, would cause significant unfair prejudice to AZIC. The Delaware statute at issue in Mr. Moyer's case had no bearing on the *MKB Constructors* case. Given the significant case-type differences, there is significant risk that a jury could unfairly consider the evidence when determining

10

AZIC's underlying liability. Mr. Moyer bears the burden to demonstrate the admissibility of the evidence and has not done so on this bare record.

Finally, the proffered evidence does not survive a D.R.E. 403 analysis for an additional reason. In addition to the level of unfair prejudice it would cause, if the Court were to admit evidence of this stand-alone case, without evidentiary context, it would risk significant juror confusion. A jury could become easily confused regarding the importance of a single, eight-year-old disparate claim given the lack of context. In this case, this significant risk of confusion substantially outweighs its relevance. Because Mr. Moyer does not satisfy the fifth *Getz* criterion (which requires a D.R.E. 403 analysis), the Court need not address the other *Getz* criteria. Mr. Moyer's motion must be denied.

## CONCLUSION

For the reasons discussed, AZIC's motion *in limine* to bifurcate (1) the issues of liability for bad faith and compensatory damages from (2) the issue of punitive damages must be **DENIED**. Furthermore, Mr. Moyer's motion requesting the Court to take judicial notice of findings in a prior Washington federal district court case must also be **DENIED.**

**IT IS SO ORDERED**

Very truly yours,

/s/ Jeffrey J Clark
Judge

JJC:klc
*Via File & ServeXpress*

11